## In re DELTA/AIRTRAN BAGGAGE FEE ANTITRUST LITIGATION.

### Civil Action File No. 1:09–md–2089–TCB.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 22, 2011.

---

Cale Howard Conley, Richard A. Griggs, Conley Griggs LLP, Craig Gordon Harley, Martin D. Chitwood, Robert Ware Killorin, Chitwood Harley Harnes, Elizabeth Louise Fite, David H. Flint, Schreeder Wheeler & Flint, LLP, David Andrew Bain, Law Office of David A. Bain, LLC, Atlanta, GA, Gregory K. Arenson, Robert N. Kaplan, Kaplan Fox & Kilsheimer,

LLP, Linda P. Nussbaum, Nussbaum, LLP, New York, NY, Daniel Kotchen, Robert A. Klinck, Daniel Low, Kotchen & Low LLP, Washington, DC, Jesse A. Davis, III, Davis & Adams, LLC, Decatur, GA, Mark S. Goldman, Goldman Scarlato & Karon PC, Conshohocken, PA, Daniel E. Gustafson, Daniel C. Hedlund, Gustafson Gluek PLLC, Minneapolis, MN, Garrett D. Blanchfield, Jr., Reinhardt Wendorf & Blanchfield, St. Paul, MN, Andrew Hoyt Rowell, III, James L. Ward, Jr., Robert S. Wood, Richardson, Patrick, Westbrook & Brickman, LLC, Mt. Pleasant, SC, R. Bryant McCulley, McCulley McCluer PLLC, Jacksonville, FL, Stuart H. McCluer, McCulley McCluer PLLC, Oxford, MS, for Plaintiffs.

Gregory B. Mauldin, Nowell D. Berreth, Randall Lee Allen, Alston & Bird, LLP, Thomas Willard Rhodes, William Parker Sanders, Smith Gambrell & Russell, Atlanta, GA, James P. Denvir, Michael S. Mitchell, Scott E. Gant, Boies Schiller & Flexner, Bert W. Rein, Wiley Rein LLP, Joshua A. Hartman, Michael V. Sachdev, Roger W. Fones, Morrison & Foerster, LLP, Washington, DC, for Defendants.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This matter is before the Court on Plaintiffs' motion for spoliation sanctions [196] against Defendant Delta Air Lines, Inc.[1] On January 27, 2011, the Court heard oral argument on the motion, and the Court has conducted an exhaustive review of the parties' briefs and letters to the Court, the record evidence, and the applicable law. Having done so, the Court will deny Plaintiffs' motion for the reasons that follow.

### I. Background

Following the Court's August 2, 2010 order [137], 733 F.Supp.2d 1348 (N.D.Ga. 2010), on the motion to dismiss filed by Delta and AirTran pursuant to Fed. R.Civ.P. 12(b)(6), only one claim remains in this putative class action: a Section 1 Sherman Act claim against Delta and AirTran based upon their alleged collusion in the implementation of a first-bag fee.[2]

As explained more thoroughly in the Court's August 2 order, the foundation of Plaintiffs' Section 1 claim is a statement made by Robert Fornaro, AirTran's CEO and president, during an October 23, 2008 analyst call, during which Fornaro stated that AirTran would "prefer to be a follower" on the first-bag fee. Less than two weeks after Fornaro's statement—which Plaintiffs interpret to be an invitation to Delta to collude—on November 5, 2008, Delta announced that it would begin charging passengers a $15 first-bag fee, effective December 5, 2008. AirTran followed Delta's lead on November 12, 2008, announcing that it would also impose a $15 first-bag fee, also effective December 5, 2008.

Plaintiffs aver that Delta and AirTran's decision to impose a first-bag fee can be traced to an unlawful agreement between the two airlines.

---

1. Additionally, Plaintiffs have filed an unopposed motion for leave to file excess pages in connection with their reply brief in support of their motion for spoliation sanctions [241], and Delta and AirTran have each filed unopposed motions seeking leave to file sur-reply briefs [255 & 257] in opposition to Plaintiffs' motion for spoliation sanctions. The Court will grant all three of these motions as unopposed.

2. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade...." 15 U.S.C. § 1. Plaintiffs are proceeding under the "conspiracy" portion of the statute. The threshold requirement of a conspiracy claim under § 1 is "an agreement to restrain trade." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 569 (11th Cir.1998).

On February 2, 2009, the United States Department of Justice Antitrust Division (the "DOJ") served a Civil Investigative Demand ("CID") upon Delta seeking information regarding its decision to adopt a first-bag fee. The CID required Delta to produce the following to the DOJ:

all documents relating to any actual or contemplated changes in the policies or practices of your company or any other airline relating to fees charged for checked baggage, including all documents relating to implementation of any such changes or relating to your company's monitoring of the actions or public statements of other airlines regarding fees charged for checked baggage.

Immediately following receipt of the CID, Delta conducted an internal investigation to determine which of its employees had any involvement in or might have documents related to the decision to adopt a first-bag fee. Based upon that investigation and in consultation with the DOJ, Delta identified twenty-two potential document custodians, consisting of employees within Delta's airport customer service team and Delta's revenue management team (the two divisions within Delta that had a role in evaluating the first-bag fee), and all members of Delta's corporate leadership team (Delta's senior-most executives who made the decision to adopt a first-bag fee in October/November 2008).

Specifically, on February 3, 2009, one day after receiving the CID, Scott McClain, Delta's assistant general counsel, e-mailed a document preservation and litigation hold notice to each of the twenty-two custodians (as well as the administrative assistants for each member of Delta's corporate leadership team).[3] Pursuant to this notice, each custodian was: (1) informed of the DOJ investigation; (2) advised that the DOJ had requested all documents related to any actual or contemplated changes in checked baggage fee policies of Delta or any other airline during the period from January 1, 2008 to the present; (3) instructed to search for, preserve and refrain from deleting or destroying any potentially responsive documents, including e-mails, other electronic documents, and paper documents; and (4) informed that someone from Delta's legal department would be following up with each of them to collect any responsive documents from their files. Over the course of the next few weeks, Delta collected paper and electronic documents, including e-mails, from the custodians and produced them to the DOJ.

Delta represents—and Plaintiffs do not dispute—that the company worked closely with the DOJ to ensure that all relevant documents were being produced.

In early May 2009, during a telephone conference, the DOJ inquired about Delta's e-mail system, including its auto-delete procedures and its practices regarding backup tapes for its e-mail servers. Plaintiffs allege that this inquiry was prompted by the DOJ's concerns regarding spoliation. However, there is no record evidence to support this argument.[4]

---

3. It appears that Steve Gorman, Delta's chief operating officer, was inadvertently omitted from the February 3, 2009 litigation hold e-mail. However, he was verbally informed of the same hold instructions at the time that the e-mail was sent, and documents were collected from Gorman. Additionally, Gorman's e-mails were already being preserved anyway pursuant to a litigation hold in a separate, unrelated matter.

4. The document upon which Plaintiffs rely is a June 26, 2009 letter from the DOJ to Delta in which the DOJ merely summarizes a conversation between the two parties regarding Delta's document retention policy. Contrary to Plaintiffs' suggestion on page eight of its November 8, 2010 brief and during the oral argument, there is no indication in the letter that the DOJ was displeased with Delta's method of preserving documents.

In any event, it appears that as a result of the May 2009 telephone conference, details emerged about how Delta's e-mail system works. Delta employees receive e-mails in their inboxes, and copies of their outgoing e-mails are stored in a sent items folder. If an employee reads an e-mail but does not manually delete or move it to a folder, the e-mail is automatically moved to a deleted items folder after sixty days, and then it is permanently deleted approximately sixty days thereafter. An employee who wants to retain a copy of an e-mail for a longer period of time can do so by moving the e-mail to a personal folder, where the e-mail is retained until the employee chooses to delete it. Notably, under Delta's document retention policy, users are instructed to create custom personal folders for e-mails or other items if there is a business need to retain such records.

Following the May 2009 telephone conference with the DOJ, on or about May 13, 2009, Delta's legal department directed its information technology department to (1) copy each CID custodian's hard drive and the entire contents of the custodian's Microsoft Outlook profile, such as e-mail, cal-endar entries, and other data items not stored within Delta's Microsoft Exchange Server Environment; and (2) place each of the CID custodians on a separate server where Delta's auto-delete policy for e-mails remaining in an employee's inbox or sent items folder for longer than sixty days did not apply.

At that time, three of the CID custodians—Glen Hauenstein, executive vice president revenue management; Steve Gorman, chief operating officer and executive vice president of Delta's airport customer service team (the leaders of the two divisions at Delta responsible for analyzing Delta's potential adoption of a first-bag fee); and Ed Bastian, Delta's president— had already been on a separate server since at least December 11, 2008 for other unrelated matters.

Additionally, as a result of discussions with the DOJ, sometime between May 19 and June 5, 2009,[5] Delta orally instructed its third-party vendor, IBM, to suspend the overwriting of backup tapes. However, IBM did not carry out this instruction until sometime in June after June 6.

---

**5.** During oral argument, Delta's counsel represented that the oral instruction to IBM was issued on approximately May 13, 2009. Following the hearing, on February 1, 2011, Plaintiffs asked Delta to provide (1) the exact date of the instruction, (2) the name of the Delta employee who gave the instruction, and (3) the name of the IBM employee who received the instruction. Citing the fact that discovery had closed, Delta refused to provide further information. On February 7, Plaintiffs brought the matter to the Court's attention, and on February 8 the Court ordered Delta to file verified and unambiguous answers to the three questions by February 16[270].

On February 16, Delta filed its verified answers to the questions, explaining that it made a mistake at the hearing, and that further investigation had revealed that the instruction was issued sometime between May 19 and June 5, 2009. Plaintiffs take issue with Delta's verified answers, arguing that the documents Delta attached thereto show that the instruction did not get issued until June 9.

The Court has carefully reviewed the documents. It is true that the documents are ambiguous regarding the exact date upon which the instruction was issued, which Delta acknowledges in its counsel's letters to the Court. Delta also represents that it has conducted a thorough investigation regarding the events in question, including interviewing all of the relevant individuals. Thus, the documents only reflect part of the narrative regarding the events in question. In light of the ambiguity of the documents and the fact that Delta has conducted a thorough investigation regarding this matter, the Court will not reject Delta's verified representation that the instruction was issued sometime between May 19 and June 5, 2009.

Also, during its investigation, the DOJ took the depositions of four Delta employees and conducted one telephone interview in December 2009. The DOJ has not requested any additional information from Delta.

On May 22, 2009, the first complaint was filed in this multidistrict litigation.

## II. *Discussion*

### A. *Legal Standard*

■ "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed.Appx. 298, 301 (11th Cir.2009). Plaintiffs, as the parties seeking spoliation sanctions, must prove that (1) the missing evidence existed at one time; (2) Delta had a duty to preserve the evidence; and (3) the evidence was crucial to Plaintiffs being able to prove their prima facie case. *Walter v. Carnival Corp.*, No. 09–20962–CIV, 2010 WL 2927962, at *2 (S.D.Fla. July 23, 2010). Even if all three elements are met, "a party's failure to preserve evidence rises to the level of sanctionable spoliation 'only when the absence of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence." *Id.* at *2 (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997)).

■ Also, in determining the propriety of spoliation sanctions, the Eleventh Circuit has instructed that courts should consider the following factors: (1) prejudice to the non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the spoiling party acted in good or bad faith, and (5) the potential for abuse of expert testimony about evidence not excluded. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir.2005).[6]

■ District courts are afforded broad discretion in determining whether to award spoliation sanctions. *Id.* at 944. Appropriate sanctions may include an adverse judgment, the denial of a defendant's motion for summary judgment, issuing jury instructions that raise a presumption against the spoliator, or the exclusion of evidence. *Id.* at 945; *Connor v. Sun Trust Bank*, 546 F.Supp.2d 1360, 1375 (N.D.Ga. 2008); *Brown v. Chertoff*, 563 F.Supp.2d 1372, 1381 (S.D.Ga.2008).

### B. *Analysis*

#### 1. *Plaintiffs' Spoliation Theory*

Unlike the quintessential spoliation situation, Plaintiffs do not contend that Delta destroyed or altered evidence during the course of this litigation.[7] Plaintiffs' argument is more nuanced; they contend that they are entitled to spoliation sanctions because Delta did not immediately comply with the CID issued by the DOJ.

More specifically, Plaintiffs maintain that even though Delta received the CID

---

**6.** These specific factors are enumerated by Georgia law, but the Eleventh Circuit in *Flury* noted that these state law factors are consistent with federal spoliation principles. *See Flury*, 427 F.3d at 945.

**7.** One clarification to this point is in order. The first case in this multidistrict litigation was filed on May 22, 2009. As noted above, sometime between May 19 and June 5, 2009, Delta instructed IBM to suspend the overwriting of backup tapes. IBM did not carry out this instruction until sometime in June after June 6, which resulted in the overwriting of the June 6, 2009 backup tape. Thus, there is one backup tape that was overwritten after this litigation commenced. However, there is no evidence that Delta intentionally sought to delay the issuance of the preservation instruction or had anything to do with IBM's delay in carrying out the instruction that it was given. Moreover, the overwriting of the June 6 backup tape is not the central basis for Plaintiffs' motion for spoliation sanctions.

on February 2, 2009, it waited until May 13, 2009 to suspend its standard electronic document destruction policy pursuant to which e-mails were automatically deleted, and it waited until sometime between May 19 and June 5, 2009 to issue the instruction to IBM to preserve its backup tapes. As a result, Plaintiffs contend that e-mails and documents going back to July 2008 were overwritten. Thus, the gravamen of Plaintiffs' spoliation theory is that upon receipt of the CID, Delta did not take immediate steps to prevent the overwriting of back-up tapes in existence in February 2009 and to cease its policy regarding the auto-deletion of e-mails.

Delta rotates three backup tapes that contain snapshots of its e-mail server as of the first Saturday of the month in which the tape is used. Because there are only three tapes, every fourth month the oldest backup tape is overwritten with new data from the most recent backup. Delta's backup tapes contain documents up to 120 days prior to the date of the backup, i.e., the sixty days an e-mail is in a user's inbox or sent items folder before being auto-deleted, plus an additional sixty days in which an e-mail is in a deleted items folder before being permanently deleted.

When Delta received the CID, it had three backup tapes: November 1 and December 6, 2008, and January 3, 2009. As noted above, each tape contained a snapshot of e-mails and other documents subject to Delta's auto-delete procedure that were created up to 120 days prior to the backup tape. Thus, when Delta received the CID, the oldest existing backup (creat-ed November 1, 2008) would have contained e-mails and documents subject to Delta's auto-delete procedure dating back to July 2008, which Plaintiffs contend was a key period in Delta's decision-making process on the first-bag fee.

However, because Delta waited until sometime between May 19 and June 5, 2009 to preserve any of the backup tapes, the oldest backup tape in existence is from April 4, 2009. As a result, the earliest documents on any backup tape date back only to December 2008.

In summary, Plaintiffs contend that because Delta did not immediately preserve the backup tapes upon receipt of the CID, documents housed on the tapes from the critical July–November 2008 time period are now missing.

In addition to Delta's failure to act more quickly to preserve backup tapes, Plaintiffs also take issue with Delta's failure to act more quickly to cease its standard practices regarding the auto-deletion of e-mails. In this regard, Plaintiffs explain that Delta waited over three months after receiving the CID (until May 13, 2009) to send the operative request to Delta's information technology department to put all of the CID custodians on a separate server so that e-mails would not get deleted.

Plaintiffs argue that Delta's failure to act more quickly resulted in the spoliation of e-mails and documents and that these missing documents would likely show collusive communications with AirTran.[8] As sanctions, Plaintiffs request (1) an order precluding Delta from filing a motion for

---

**8.** Although Plaintiffs only seek sanctions from Delta, they also complain that there may be missing AirTran documents due to technical glitches in AirTran's back-up e-mail system that allegedly failed to create archived copies of e-mails for portions of the July–November 2008 time period. AirTran disputes this, arguing that it has produced 21,886 e-mails from this time frame and that Plaintiffs have not shown that any material documents are missing. AirTran also explains that its primary e-mail server did not fail and that it keeps emails up to capacity for each user indefinitely. Because Plaintiffs' present motion seeks sanctions only against Delta, the Court need not address the sufficiency of AirTran's document preservation efforts.

summary judgment—or alternatively applying to any Delta summary judgment motion an adverse jury inference that Delta destroyed documents that would have been supportive of Plaintiffs' claims; and (2) the issuance of an adverse jury instruction on spoliation.

### 2. Analysis

The Court has carefully considered Plaintiffs' arguments in light of the legal standards articulated above. Having done so, the Court finds that the balance of the relevant spoliation factors weigh in favor of Delta and that, above all, Plaintiffs have failed to carry their burden of proving that the requested sanctions are justified. In reaching this conclusion, the Court finds the issues discussed below to be the most significant.

### a. Delta's Duty to Preserve

■ Before even getting to the question of whether Delta acted appropriately in response to the CID, Plaintiffs must first show that Delta owed them a duty to preserve documents. This is because a party's obligation to retain documents, including e-mails, is only triggered when litigation is reasonably anticipated. *Man-*

*aged Care Solutions, Inc. v. Essent Healthcare, Inc.,* 736 F.Supp.2d 1317, 1324–25 (S.D.Fla.2010). Thus, if Delta owed any document preservation duty to Plaintiffs, it arose only when Delta could have "reasonably foreseen" civil litigation. *See Walker v. I.R.S.,* No. 4:07–cv–0102, 2009 WL 1241929, at *1 (N.D.Ga. Feb. 26, 2009) ("Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use in pending or reasonably foreseeable litigation") (citation omitted).

■ Plaintiffs' spoliation motion rests upon a critical assumption: that they (as private parties in civil litigation) can enforce the provisions of the February 2009 CID (a confidential investigation commenced by the DOJ) against Delta when there is no suggestion that the DOJ has taken action against Delta for failure to comply with the CID,[9] and where the CID was issued more than three months before the first case in this action was filed on May 22, 2009.

Plaintiffs have not cited any authority that would support such a sweeping and novel theory of spoliation.[10] In the ab-

---

9. Notably, although the Antitrust Civil Process Act expressly provides the DOJ a mechanism to enforce compliance with the CID, the DOJ has taken no such action against Delta.

10. During oral argument, Plaintiffs argued that *Swofford v. Eslinger,* 671 F.Supp.2d 1274, 1278 (M.D.Fla.2009), supported their theory because the opinion states in dicta that "[a]dditionally, Defendants were under an obligation to retain the evidence in question while the outcome of a law enforcement investigation was pending." However, in *Swofford,* not only was there a pending law enforcement investigation regarding the shooting incident, but also a pending lawsuit against the defendants relating to the same incident. The plaintiff had made specific requests to the defendants that all evidence relating to the incident be preserved. Thus, there was no question in *Swofford* that the

defendants owed a preservation duty to the plaintiff. Indeed, it is not even clear that the defendants in *Swofford* contested this element of the plaintiff's spoliation motion. And notwithstanding the fact that the defendants received clear preservation instructions from the plaintiff, the defendants in *Swofford* never issued any directives or litigation hold instructions to the relevant individuals. As a result, a laptop computer, key e-mails, and the radios, guns and uniforms used on the night in question were destroyed. *Swofford* is inapposite and does not come close to supporting the broad theory of spoliation that Plaintiffs advance here.

Plaintiffs also cited the Sedona Conference in their brief and at oral argument. However, the Sedona Conference does not suggest that the opening of a government investigates creates a duty to preserve documents relevant to potential claims by an unidentified third-

sence of such authority, the Court is unwilling to conclude that upon service of a DOJ-issued CID, a duty to Plaintiffs to preserve documents devolved upon Delta even though Plaintiffs did not file this action until three months later. The Court's caution in this regard is particularly justified given the severe sanctions that Plaintiffs seek.

To be sure, upon receipt of the CID, Delta had a duty to the *DOJ* to preserve and produce all relevant documents. However, the Court has difficulty accepting the notion that at that time, as a matter of law Delta immediately owed the same duty to *Plaintiffs*.

During oral argument, Plaintiffs suggested that the duty to preserve documents is a duty that does not attach to any party. Thus, Plaintiffs posit that anyone (including them) could advance a spoliation argument against Delta for its alleged failure to comply with the DOJ's CID. However, not only is such a suggestion unsupported by any case law, but it flies in the face of the legal definition of the word duty, which defines duty as a "legal obligation that is owed or due to *another* ...." BLACK'S LAW DICTIONARY 580 (9th ed.2009) (emphasis added).

■ During oral argument, Plaintiffs also chastised Delta for not having found a case that supports its position on the duty issue. However, Plaintiffs, not Delta, have the burden of proof on the spoliation issue, including the legal elements needed to establish spoliation. *See Eli Lilly & Co. v. Air Express Int'l USA, Inc.*, 615 F.3d 1305, 1318 (11th Cir.2010).

In essence, Plaintiffs ask this Court to hold that, as a matter of law, when a business is served with a CID, an irrebuttable presumption arises that civil litigation filed by one or more parties against the business receiving the CID is reasonably foreseeable. No court has so held, and this Court is unwilling to be the first.

Two important points about the CID must be emphasized. First, it triggered the commencement of a confidential investigation. Indeed, the Government did not publicize its investigation, and all documents and testimony provided to the Government in response to the CID remain confidential. Second, the first case in this MDL action was not filed until May 22, 2009, over three months after Delta was served with the CID. As Delta explains in its briefs, it has been the recipient of numerous CIDs, subpoenas, or similar formal demands for information from the DOJ that have not led to either private or government litigation. For these reasons, when Delta received the CID, it cannot be said that Delta should have anticipated this lawsuit. Consequently, Delta owed no preservation duty to Plaintiffs that it could have breached. If Delta failed to comply with the CID, the DOJ—not Plaintiffs—is the appropriate party to take action.

**b. *Prejudice to Plaintiffs***

Additionally, even if Plaintiffs could show that Delta's receipt of the CID triggered a preservation duty that Plaintiffs can somehow enforce, Plaintiffs must still establish that critical evidence existed and was destroyed, i.e., they must show prejudice.

■ According to Plaintiffs, because of Delta's spoliation no documents exist regarding (1) Delta's response and/or reaction to AirTran's allegedly collusive communications; (2) the reasons Delta's airport customer service department changed its position regarding the first-

party. *See* Legal Holds: The Trigger & The Process, 11 Sedona Conf. J. 265, 267, 271 ("The duty to preserve requires a party to identify, locate, and maintain information and tangible evidence that is relevant to *specific and identifiable litigation* ") (emphasis added).

bag fee; (3) why Delta's revenue management team assumed that AirTran was more likely than Southwest and Jet Blue to follow Delta's lead in imposing a first-bag fee; and (4) Delta and Northwest's pre-merger communications, in which Delta considered and rejected one approach to the combined carrier implementing a first-bag fee.[11]

The problem with Plaintiffs' argument is that it rests upon speculation that important documents concerning the above matters existed but were destroyed. Most revealing is the fact that even though Plaintiffs have deposed multiple Delta witnesses regarding the existence of missing documents, they have failed to adduce any evidence that any key documents existed but were spoliated. In order to impose sanctions against Delta, the Court would have to substitute Plaintiffs' speculation for actual proof that critical evidence was in fact lost or destroyed.

Despite these inherent flaws in their argument, during oral argument Plaintiffs argued that *Connor* "matches up almost perfectly with this case." The Court disagrees.

In *Connor*, the plaintiff brought suit against Sun Trust Bank, alleging that it violated the Family and Medical Leave Act of 1993 ("FMLA") by interfering with her substantive rights and retaliating against her for engaging in protected activity. The plaintiff moved for spoliation sanctions based on the fact that Sun Trust had failed to produce a key e-mail (referred to as "the February 12 e-mail") that contained information regarding the reasons she had been terminated. The plaintiff had obtained the February 12 e-mail on her own through other means. Even though the February 12 e-mail was highly relevant to the plaintiff's claims, it was undisputed that had the plaintiff not happened to locate the e-mail on her own, she would never have known of its existence.

Under these circumstances, the *Connor* court reasoned that the prejudice resulting from Sun Trust's failure to produce an indisputably relevant email raised a concern that other relevant emails may have existed but were deleted by Sun Trust. In awarding sanctions, the court emphasized that it was particularly concerned that the sender of the February 12 e-mail—Ms. Weigel—had "affirmatively deleted" the e-mail to avoid having it produced. 546 F.Supp.2d at 1360.

*Connor* is inapposite for two reasons. First, it involved a situation where the plaintiff was able to point to a specific, crucial piece of evidence (indeed, the court characterized the February 12 e-mail as "arguably the most relevant e-mail") that had been destroyed by the defendant. Second, there was evidence that the defendant had acted in bad faith because all indications were that Ms. Weigel had affirmatively deleted the e-mail in order to avoid having it produced. These egregious circumstances are not present in the case at bar.

Citing *Brown, Swofford,* and *Telectron, Inc. v. Overhead Door Corp.,* 116 F.R.D. 107, 110 (S.D.Fla.1987), Plaintiffs also maintain that they do not have to show that the allegedly missing evidence would be damaging to Delta. Although it is true

---

**11.** Additionally, Plaintiffs argue that Delta has not produced any e-mails from the files of Gail Grimmett, former vice president of Delta's revenue management team. However, as Delta explains, in the weeks leading up to Delta's decision to adopt a first-bag fee, Grimmett did not participate in the editing of the value proposition presentation or in the discussions within revenue management about the first-bag fee decision because she was transitioning to a new position with Delta in New York, which she started on November 1, 2008.

that in these cases the courts did not require the plaintiff to show that the missing evidence was damaging or detrimental to the defendant's case, it is also true that the plaintiffs had all shown that the missing evidence was *relevant and crucial* to their claims. *See Brown*, 563 F.Supp.2d at 1376 (the defendant destroyed plaintiff's entire case file in violation of its general records schedule and an EEOC regulation); *Swofford*, 671 F.Supp.2d at 1278–79 (the defendants destroyed a laptop computer, key e-mails, and the radios, guns, and uniforms used on the night in question); *Telectron*, 116 F.R.D. at 109–10 (the defendant destroyed documents directly pertaining to the plaintiff's claims).

By contrast, in this case Plaintiffs offer nothing more than speculation that the allegedly missing documents were relevant and crucial to their claims. It also bears noting that in *Swofford* and *Telectron* there was overwhelming evidence that the defendants had destroyed the evidence in bad faith. *See Swofford*, 671 F.Supp.2d at 1282 (noting that this is "a case of knowing and willful disregard for the clear obligation to preserve evidence that was solely within the possession and control of the Defendants"); *Telectron*, 116 F.R.D. at 109–10 (the defendant's in-house counsel willfully and intentionally ordered the immediate destruction of *relevant documents pertaining to the plaintiff's complaint*). No such evidence exists in this case.

■ In any event, nothing in the above cases contradicts the fact that to justify the imposition of spoliation sanctions, courts within this circuit have recognized the importance of the movant proving that "critical" or "crucial" evidence was destroyed. *See Flury*, 427 F.3d at 943, 947 (awarding sanctions in part because the destroyed evidence (the allegedly defective vehicle) was "the most crucial and reliable" evidence and it was "critical" to the case); *Graff*, 310 Fed.Appx. at 302 (upholding

spoliation sanctions because "*the* critical piece of evidence in th[e] case" was destroyed); *Nat'l Grange Mut. Ins. Co. v. Hearth & Home, Inc.*, No. 2:06–cv–54–WCO, 2006 WL 5157694, at *4–6 (N.D.Ga. Dec. 19, 2006) (imposing sanctions after noting repeatedly that the plaintiff had lost the "crucial" or "key" piece of evidence); *Connor*, 546 F.Supp.2d at 1377 (imposing sanctions after observing that the defendant had failed to preserve "the most relevant e-mail").

Where, as here, the moving party is not able to establish that the allegedly destroyed evidence is critical to the case, courts have consistently refused to impose spoliation sanctions. *See Heath v. Wal–Mart Stores East, LP*, 697 F.Supp.2d 1373, 1378 (N.D.Ga.2010) (refusing to impose spoliation sanctions in part because the missing evidence was "only part of the puzzle"); *Frey v. Gainey Transp. Servs., Inc.*, No. 1:05–cv–1493–JOF, 2006 WL 2443787, at *8–9 (N.D.Ga. Aug. 22, 2006) (finding no prejudice because the missing evidence was "not crucial" to the plaintiff's claims); *Petcou v. CH Robinson Worldwide, Inc.*, No. 1:06–cv–2157–HTW–GGB, 2008 WL 542684, at *3 (N.D.Ga. Feb. 25, 2008) (denying spoliation sanctions because among other things "the resulting prejudice to Plaintiff was relatively minor given other available evidence").

Additionally, Plaintiffs' position fails to recognize that Delta has produced documents from the July–November 2008 time period, including some documents addressing the four allegedly deficient issue areas discussed above. Indeed, Delta has produced to Plaintiffs over 9,000 pages of documents in this litigation. In this regard, it is important to underscore that so long as a Delta custodian created folders for his e-mails, all of the e-mails in those folders were preserved, including those from the July–November 2008 time peri-

od.[12] Just because these e-mails and other documents that were produced by Delta may not be as helpful to Plaintiffs' theory of the case as Plaintiffs would like, it does not follow that other, more incriminating documents existed but were destroyed.

Furthermore, even assuming that some relevant documents were destroyed, any prejudice that may have been suffered by Plaintiffs is mitigated by the fact that they have been afforded a full opportunity to depose all of the relevant Delta employees who may have played a role in the first-bag decision. And as already noted, none of these employees testified regarding the existence of crucial but now destroyed documents. *See Griffin v. GMAC Commercial Fin., LLC,* No. 1:05–cv–199–WBH–GGB, 2007 WL 521907, at *4 (N.D.Ga. Feb. 15, 2007) (concluding that destroyed evidence "had little practical effect" on the plaintiff in part because he remained "free, during discovery, to question all of those involved"). The availability of Delta's witnesses—and their consistent corroborated testimony on the matters into inquired by Plaintiffs—lessens any prejudice that they may have suffered. *See Brown,* 563 F.Supp.2d at 1379 (availability of testimony of the individuals whose documents have been destroyed helps to alleviate any prejudice from the spoliation).

Finally, the credibility of Plaintiffs' position is weakened by their overly sanguine view of the evidence that they do have. This is a problem that permeates Plaintiffs' briefs, and the Court will discuss two of the more significant examples.

▮ First, Plaintiffs represent that AirTran has produced documents that constitute "direct evidence" of a conspiracy, i.e., e-mails reflecting collusive communica-

tions with Delta. Plaintiffs then contend that Delta must have destroyed documents because it has failed to produce documents that correspond to these AirTran e-mails.

Although a full examination of the merits of these AirTran e-mails would be premature at this stage of the case (such an examination awaits the summary judgment stage), suffice it to say that they do not constitute direct evidence of a conspiracy, and most importantly for present purposes, they do not prove that corresponding Delta documents must have existed.

The e-mails in question are written by Scott Fasano, an AirTran employee, to his superiors regarding his efforts during a six-day period in July–August 2008 to contact five people he knew from his former employment with Delta. It turns out that three of the five people whom Fasano attempted to contact were not even Delta employees at the time. As for the two Delta employees whom Fasano allegedly contacted, he spoke to them over the telephone, and they were low-level employees who had no involvement in or knowledge of Delta's first-bag fee plans. These low-level employees have testified that they never even spoke with Fasano. Also, Fasano admitted in his deposition that he made up some of the information in his e-mails to impress his superiors. Moreover, these e-mails were written three months before Delta made its decision to adopt a first-bag fee. These e-mails simply are not direct evidence of collusion, and they do not prove that corresponding documents from Delta existed but were destroyed.

▮ Second, Plaintiffs contend that twenty-nine e-mails evincing communica-

---

**12.** Plaintiffs describe a scenario that they claim is ripe for abuse in which an employee with an incriminating e-mail saved in a personal folder could simply move that e-mail to his inbox and the e-mail would automatically be deleted after a period of time or he could manually delete the e-mail. However, there is no evidence that any Delta employee ever engaged in such conduct.

tions between Delta and AirTran were produced only by AirTran and not Delta. On its face, this would appear to be a troubling revelation that might support Plaintiffs' spoliation theory. However, upon closer inspection it becomes apparent that none of these e-mails relates to first-bag fees. Instead, they either concern Atlanta airport lease negotiations, an issue that was never part of the DOJ's inquiry, or they have nothing to do with this case at all.[13]

In summary, although Plaintiffs may have shown that some documents were not preserved immediately following the CID, they have failed to demonstrate that critical documents existed but were destroyed. Accordingly, Plaintiffs have failed to demonstrate sufficient prejudice to justify the sanctions that they seek.

### c. *Bad Faith*

Finally, even if the Court could find that Delta owed a preservation duty to Plaintiffs and that Delta spoliated critical documents, sanctions would not be warranted because Plaintiffs have failed to carry their burden of showing that Delta acted in bad faith.

 The touchstone in evaluating a party's preservation efforts is the party's good faith and reasonableness. *Accord Miller v. Holzmann,* No. 95–1231, 2007

WL 172327, at *6 (D.D.C. Jan. 17, 2007) (adopting Sedona conference principle of "reasonable and good faith efforts to retain information"); *Rimkus Consulting Grp., Inc. v. Cammarata,* 688 F.Supp.2d 598, 613 (S.D.Tex.2010) ("Whether preservation or discovery conduct is acceptable in a case depends on what is *reasonable,* and that in turn depends on whether what was done— or not done—was *proportional* to that case and consistent with clearly established applicable standards").

 On February 2, 2009, Delta received the DOJ's CID. The next day, Scott McClain, Delta's assistant general counsel, e-mailed a document preservation and litigation hold notice to each of the twenty-two CID custodians whom Delta identified in consultation with the DOJ, as well as the administrative assistants for each member of Delta's corporate leadership team. All of these individuals were instructed to search for, preserve and refrain from deleting or destroying any potentially responsive documents to the CID, including e-mails, other electronic documents, and paper documents. In the weeks that followed, documents were collected and produced to the DOJ.

On May 13, 2009, following a telephone conference with the DOJ, Delta's legal department instructed its information technology department to copy each custodi-

---

**13.** Plaintiffs further contend that Delta has not produced any e-mails from the files of Delta's executive vice president of operations, Steve Gorman, and that they are also missing "hundreds of additional e-mails" from the files of Eric Phillips. However, as Delta explains, Gorman testified that he was not aware of having any documents prior to Delta's decision to adopt a first-bag fee that he then deleted after Delta's decision to adopt a first-bag fee. Additionally, Gorman had already been placed on Delta's litigation hold server by December 11, 2008—thereby preventing the deletion of any items in his deleted items folder as a result of the auto-delete process. As for Phillips, Delta explains that

the allegedly missing e-mails consist of various communications between Delta corporate communications and others within Delta regarding preparations for launching a press release announcing the post-merger alignment of Northwest and Delta's fees. Numerous copies of these draft press releases were produced by Delta to Plaintiffs, and there is nothing in Phillips's deposition testimony to suggest that there were any material versions of these press releases that have not been produced. Most importantly, Plaintiffs fail to explain how the drafting of a press release announcing the decision is material to their claims.

an's hard drive and the entire contents of the custodian's Microsoft Outlook profile, including e-mail, calendar entries, and other data items not stored within the Exchange Server Environment. Additionally, the custodians were placed on a separate server where Delta's auto-delete policy for e-mails left in an employee's inbox or sent items folder for longer than sixty days did not apply. Moreover, sometime between May 19 and June 5, 2009, Delta instructed IBM to discontinue the overwriting of any backup tapes.[14]

In hindsight, Delta should not have waited to take these additional document preservation steps. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 524 (D.Md.2010) ("It generally is recognized that when a company or organization has a document retention or destruction policy, it is obligated to suspend that policy and implement a litigation hold to ensure the preservation of relevant documents once the preservation duty has been triggered.") (quotation marks omitted). However, without some evidence that Delta's delay was intentional, its failure to act more quickly does not prove bad faith. It is also important to remember that the scope of the CID was narrower than the allegations in Plaintiffs' consolidated amended complaint. The CID involved a limited inquiry into the circumstances surrounding a single decision (the first-bag fee decision), taking place within a discrete period of time and involving a readily defined group of employees at Delta's Atlanta headquarters. Under the circumstances, Delta's failure to act more quickly to suspend its standard document destruction policies is arguably understandable and was not tantamount to bad faith.

At most, Delta's failure to act more quickly in the face of the CID constitutes negligence, which is insufficient to support spoliation sanctions under the law of this circuit. *See Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997); *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir.1975); *Floeter v. City of Orlando*, No. 6:05–cv–400–Orl–22KRS, 2007 WL 486633, at *7 (M.D.Fla. Feb. 9, 2007) ("in this circuit the negligent destruction of evidence is insufficient to support an adverse jury instruction"). As the Eleventh Circuit made clear in *Bashir*, " '[m]ere negligence' in losing or destroying the records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.' " 119 F.3d at 931 (quoting *Vick*, 514 F.2d at 737). Plaintiffs have not adduced any evidence that Delta destroyed or tampered with evidence out of a consciousness of a weak case.

Plaintiffs suggest that the Eleventh Circuit's decision in *Flury* may relieve them of their burden to demonstrate bad faith, as that decision indicates that bad faith is just one of several factors to be considered in the spoliation analysis. *See Flury*, 427 F.3d at 946 ("The court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party").

The Court rejects the notion that the Eleventh Circuit in *Flury* intended to change the spoliation calculus set forth in *Bashir*. Indeed, in several cases subsequent to *Flury*, the Eleventh Circuit has reiterated that a finding of bad faith is a prerequisite to spoliation sanctions. *See, e.g., Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir.2009); *Cox v. Target*

---

**14.** As previously noted, IBM did not carry out this instruction until sometime in June after June 6. However, there is no evidence that Delta caused IBM's delay or that Delta intentionally delayed the issuance of its instruction to preserve the backup tapes. Indeed, the documents evidencing Delta's communications with IBM show that Delta worked closely with IBM and the DOJ during the May–June 2009 time period to collect pertinent information regarding its backup tape system and to preserve the tapes.

*Corp.*, 351 Fed.Appx. 381, 383–84 (11th Cir.2009); *Slattery v. Precision Response Corp.*, 167 Fed.Appx. 139, 141 (11th Cir. 2006).

In any event, under the prior precedent rule, the Eleventh Circuit's decision in *Bashir* remains controlling on this issue.[15] *See Smith v. GTE Corp.*, 236 F.3d 1292, 1301 (11th Cir.2001). Moreover, every district court within this circuit that has imposed sanctions based upon a failure to preserve electronically stored information has done so only upon a finding that the sanctioned party acted in bad faith. *See Connor*, 546 F.Supp.2d at 1376–77 (finding bad faith because custodian "affirmatively deleted" the "most relevant e-mail" after she was notified to preserve the document); *Optowave Co. v. Nikitin*, No. 6:05–cv–1083–Orl–22–DAB, 2006 WL 3231422, at *9–11 (M.D.Fla. Nov. 7, 2006) (finding bad faith where forensic computer expert testified to the intentional deletion of e-discovery); *Se. Mech. Servs., Inc. v. Bro-*

*dy*, 657 F.Supp.2d 1293, 1300–02 (M.D.Fla. 2009) (finding bad faith where forensic computer experts agreed that e-discovery was "wiped" pursuant to "deliberate and intentional actions"); *Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1280–81 (M.D.Fla. 2009) (finding bad faith because the defendant took no steps to preserve any e-discovery despite several document preservation demands sent by the plaintiff).

During oral argument, Plaintiffs also pointed out that they do not have to show malice to establish bad faith. *See Graff*, 310 Fed.Appx. at 302. Although this may be a correct statement of the law, Plaintiffs still must show more than that Delta acted negligently, which as previously noted, they have failed to do.

Relying upon *Smith v. Ga. Energy USA, LLC*, 259 F.R.D. 684, 696 (S.D.Ga.2009), Plaintiffs also argue that bad faith may be found due to the "manner of the destruction of documents."[16] However, *Smith* is

---

**15.** Plaintiffs should have cited *Bashir* in their brief in support of their motion for spoliation sanctions (or during oral argument) because it is obviously the controlling and applicable Eleventh Circuit case on the issue of bad faith in the spoliation context.

**16.** Plaintiffs also attempt to construct an argument that Delta's alleged failure to correctly respond to an October 1, 2010 interrogatory regarding pre-merger communications with Northwest constitutes evidence of its bad faith. Relying upon this, Plaintiffs make the strong accusation that Delta "has impeded their legitimate discovery efforts."

The interrogatory in question asked Delta to [i]dentify any communications, conversations, or meetings between Delta and Northwest between April 14, 2008 and October 29, 2008 at which fees or fares for the combined Delta–Northwest entity were discussed.... Delta responded that no "such communications, conversations, or meetings occurred." Plaintiffs argue that the deposition testimony of Glen Hauenstein contradicts Delta's response to the interrogatory because he testified that he did meet with Northwest personnel pre-merger, and specifically that he met with Paul

Dailey, a Northwest employee who was involved in merger integration activities.

Once again, Plaintiffs take an overly sanguine view of the record. Although Hauenstein testified that he met with Dailey pre-merger, he also testified that the conversation involved issues regarding "programming" and "technology" and "options for first-bag fees post-merger," and that they "did not discuss first-bag fees." Also, when pressed as to exactly *when* the conversation took place, Hauenstein backtracked from his original answer and indicated that he could not remember the timing of the conversation.

Moreover, Plaintiffs asked the Court for an extension of time to file their reply brief in support of their motion for spoliation sanctions specifically because they wanted to depose Dailey regarding this issue. However, in their reply brief Plaintiffs fail to cite or even mention Dailey's testimony. This is not surprising, as Dailey testified unequivocally that the discussion he had with Hauenstein occurred in "the weeks or months *following* the merger completion."

In summary, the record is at most ambiguous as to whether any pre-merger first-bag fee

inapposite, as the defendants in that case burned selective evidence after the government had shut down their former businesses for suspected criminal activity. Indeed, all of the cases cited by Plaintiffs in support of their theory of bad faith involved much more egregious circumstances than are present here. *See Flury,* 427 F.3d at 944–45 (in a manufacturing defect case, motorist failed to preserve the vehicle in question); *Graff,* 310 Fed.Appx. at 302 (in a products liability action alleging that a boat's gimbal housing was defective, the plaintiffs removed and spoliated the housing without notifying the manufacturers); *Connor,* 546 F.Supp.2d at 1377 (relevant custodian "affirmatively deleted" the most relevant e-mail); *Swofford,* 671 F.Supp.2d at 1281–82 (defendants took no steps to preserve any e-discovery despite several document preservation demands sent by the plaintiff).

By contrast, Plaintiffs complain that Delta failed to suspend its standard document retention policy months before any litigation was filed and that it should have immediately preserved backup tapes containing every e-mail at Delta upon its receipt of the CID. Plaintiffs have not identified a single case where a court has imposed sanctions for this type of conduct. As previously stated, while Delta's actions may constitute negligence, Plaintiffs have failed to prove that they are indicative of bad faith.

### III. *Conclusion*

For all of these reasons, the Court finds that Plaintiffs' motion for spoliation sanctions should be denied. However, the Court's ruling does not necessarily foreclose the possibility that, in the event that

discussions occurred between Delta and Northwest. Above all, Plaintiffs have failed to demonstrate that Delta's response to the interrogatory was patently false or so misleading so as to warrant spoliation sanctions.

this case goes to trial, Plaintiffs may be able to introduce evidence and argue regarding Delta's failure to retain certain documents. *See Managed Care Solutions, Inc.,* 736 F.Supp.2d at 1333–34.

The Court DENIES Plaintiffs' motion for spoliation sanctions [194]; GRANTS Plaintiffs' motion for leave to file excess pages in connection with their reply brief in support of their motion for spoliation sanctions [241]; GRANTS AirTran's motion for leave to file a sur-reply brief in opposition to Plaintiffs' motion for spoliation sanctions [255]; and GRANTS Delta's motion for leave to file a sur-reply brief in opposition to Plaintiffs' motion for spoliation sanctions [257].

Furthermore, Plaintiffs have failed to support with any record evidence their bold accusation that Delta has "impeded their legitimate discovery efforts."