[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15182

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 5, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-00205-CV-2

BRYANT FLURY,

Plaintiff-Appellee,

versus

DAIMLER CHRYSLER CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(October 5, 2005)

Before BIRCH, CARNES  and FAY, Circuit Judges.

FAY, Circuit Judge:

Plaintiff, Bryant Flury ("Flury"), sued defendant, Daimler Chrysler Corp. ("DCC"), for enhanced injuries, which he claimed to have suffered as a result of a manufacturing defect in his vehicle's airbag system. On June 30, 2004, a jury awarded Flury $250,000 for enhanced injury. DCC now appeals on the following three grounds: (1) The district court erred in denying DCC's motion for judgment as a matter of law under FED. R. CIV. P. 50; (2) The district court erred in allowing the testimony of Flury's accident reconstruction expert, Barry Riner ("Riner"); and (3) The district court failed to impose meaningful sanctions for spoliation of the subject vehicle. We agree that the district court failed to impose meaningful sanctions for plaintiff's spoliation of critical evidence and reverse on those grounds.[1]

## I. Background

Flury purchased a new 1996 Dodge Ram pickup truck, with no modifications to the airbag system, from Taylor Chrysler in Claxton, Georgia in the summer of 1996. On November 9, 1996, Flury fell asleep while driving the vehicle, drove off the road and crashed into a tree. Flury was wearing a seatbelt during the accident, but the vehicle's airbags did not deploy. Flury testified that he was traveling at approximately 55 miles per hour when he drove off the road. His truck went through a ditch,

---

[1] This opinion renders moot the first two issues regarding inclusion of expert testimony under Fed R. Evid. 702 and judgment as a matter of law under Fed. R. Civ. P. 50.

sideswiped a utility pole, proceeded through a fence, and then struck a pine tree. Flury estimated that the truck was traveling at 35 to 40 miles per hour when it hit the tree.

Riner, Plaintiff's accident reconstruction expert, testified that Flury must have hit the tree at greater than 15 miles per hour. Riner's opinion was based solely upon his observation of post-accident photographs and consideration of the accident report.[2] The accident report classified damage to Flury's vehicle as extensive. Photographs indicated that the vehicle hood was pushed up and that the bumper was pushed in.[3] State Farm Mutual Automobile Insurance Company ("State Farm") ultimately declared the vehicle a total loss. Riner concluded that Flury must have impacted the tree at over 15 miles per hour to incur that kind of damage.

Riner also presented testimony regarding airbags and what conditions cause them to deploy. He stated that in general, airbags are designed not to deploy when a vehicle collides at speeds less than 8 miles per hour; that airbags sometimes deploy at speeds between 8 and 14 miles per hour; and that airbags should always deploy at speeds of 15 miles per hour or greater. He further stated that his assessment applied

---

[2] Riner did not use the photographs to perform an accident reconstruction using photogrammetric analysis or any other accident reconstruction methodology.

[3] Although there is some confusion as to who took the photographs, it appears that Holly Baxter probably took them, and that they were taken at Baxter's Paint and Body Shop.

most accurately to frontal collisions because the chance of airbag deployment decreases with the angle of collision. That is, the less direct the crash , the less chance that the airbag will deploy. Riner concluded that because Flury crashed head-on into a tree at greater than 15 miles per hour, his airbag should have deployed during the accident.

Dr. Dwayne.Clay ("Clay"), Flury's pain specialist, testified that forward flexion could have caused Flury's injury to be more serious. Clay was not allowed to testify that the airbag malfunctioned, or that the airbag would have prevented forward flexion because he lacked knowledge of airbag mechanics.

Following the accident, the vehicle was towed to Baxter's Paint and Body Shop. On November 22, 1996,[4] Flury's counsel sent a letter to DCC notifying DCC of the accident and of the airbag's failure to deploy. The letter specifically directed DCC not to contact Flury without express consent of counsel.[5] DCC replied to

---

[4] The vehicle was apparently held at Baxter's for approximately one month after the accident.

[5] Plaintiff's letter was addressed to Chrysler Corporation/Truck Division and read in pertinent part:

> Please take notice that I represent the above-named individual [Arie Bryant Flury] as attorney as a result of damages and injuries received in the above-referenced accident. At the time of the accident, the air bags in his 1996 Dodge 1500... did not deploy, therefore, because of this product defect Mr. Flury sustained enhanced injuries.

> Please do not contact my client unless I am present or with my express consent. I hold a contingent fee contract in this case.

Flury's letter on January 3, 1997, requesting, among other things, the location of the vehicle for inspection purposes. By this time, the vehicle had apparently been removed to the residence of Flury's parents. Flury's counsel never responded to DCC's letter.[6] Of course, DCC had no way of conducting any investigation without knowing the vehicle's location. The vehicle was eventually removed from Flury's parents' residence and sold for salvage by his insurer, State Farm. Counsel did not disclose the vehicle's location to DCC prior to its removal by State Farm, nor did he notify DCC of the planned removal. Flury had no knowledge of the vehicle's whereabouts after State Farm had removed it.[7]

As for Flury's injuries, he sought treatment five days after the accident from his general physician, Dr. Jerry Purcell. Flury complained of lower back pain, and Dr. Purcell diagnosed him with lumbar strain. Flury visited Dr. Purcell four times between November 14 and December 10, 1996. Four years later, on October 14, 2000, Flury visited the Evens Hospital Emergency room complaining again of back pain, which he claims started while he was lifting a tire. On March 14, 2002, Flury

_____

Please advise as to who will be handling this claim.

[6] One can only assume that counsel must have had some doubt about the value of this claim since Flury was diagnosed with a back strain, visited the doctor four times, and went back to work.

[7] According to Flury's testimony, this was sometime between six months and one year after the accident.

saw pain specialist, Dr. Dwayne Clay. Finally, in May 2002, Flury visited neurosurgeon, Dr. James Robinson, who performed surgery on Flury for a herniated disk on August 29, 2002.

## II. Procedural history

On December 23, 2002, approximately six years after the accident, Flury filed a diversity suit in federal court against DCC for enhanced injury to his lower back.[8] Flury claimed that the driver's airbag of his Dodge Ram was defective because it failed to deploy during the accident. He further claimed that the airbag's failure caused him greater injuries than he would have received if the airbag had deployed properly.

DCC deposed several of Flury's witnesses before trial, including Riner and Clay. DCC moved to exclude Clay's testimony under Fed. R. Evid. 702. Certain portions of Clay's testimony were consequently excluded from evidence pursuant to an order from the magistrate judge. Specifically, the order excluded that portion of his testimony pertaining to airbag mechanics, based on the conclusion that Clay lacked the requisite knowledge to present testimony on that subject. DCC also moved to exclude Riner's testimony under Fed. R. Evid. 702. The magistrate entered an

---

[8] DCC had heard nothing from Flury's attorney between the November 22, 1996, letter and the filing of the lawsuit.

order granting in part and denying in part DCC's motion. Specifically, the order excluded that portion of Riner's testimony regarding airbag system design and manufacture because Riner lacked sufficient training on that subject.

On March 15, 2004, DCC moved for summary judgment under Fed. R. Civ. Pro. 56. The court denied DCC's motion, and applied a balancing test to the issue of spoliation in order to determine whether or not dismissal was warranted on those grounds. The balancing test weighed the culpability of the spoliator against prejudice to the opposing party. See Bridgestone/Firestone North American Tire, LLC v. Campbell, 574 S.E. 2d 923, 927 (Ga. App.2002). The court did not delve specifically into the Bridgestone/Firestone factors, but rather focused on the relative culpability of the parties. The court determined that DCC had several months to follow up on its request to inspect the vehicle, therefore, DCC shared some of the culpability and dismissal was not warranted.

Instead of dismissing Flury's case, the court instructed the jury to apply a rebuttable presumption that the evidence not preserved, in this case the vehicle, was unfavorable to the party responsible for spoliation. Thus, if the jury found that Flury was responsible for spoliation before DCC had an opportunity to inspect it, the jury should presume that the vehicle was not defective. The court did not find plaintiff responsible for spoliation and in fact suggested that defendant was partly to blame.

The court ultimately left the issue of spoliation to the jury.[9]

Trial began on June 28, 2004, and at the close of Flury's case in chief, DCC moved for judgment as a matter of law under Fed. R. Civ. P. 50. The district court withheld judgment on the motion, and the jury ultimately awarded Flury $250,000. DCC subsequently renewed its motion for judgment as a matter of law, and the motion was denied.

### III. Spoliation Sanctions

We review the district court's decision regarding spoliation sanctions for abuse of discretion. See Chambers v. NASCO, Inc., 501 U.S. 32, 55, 111 S.Ct. 2123, 2138 (1991); see also Harris v. Chapman, 97 F.3d 499, 506 (11th Cir.1996)(district court's denial of sanctions reviewed for abuse of discretion). This case hinges upon the significance of the evidence destroyed, and upon the extreme prejudice the defendant suffered as a result. Although the district court is afforded a considerable amount of discretion in imposing sanctions, we believe the extraordinary nature of plaintiff's

---

[9] Specifically, the jury instruction read:

The term "spoliation" refers to the failure to preserve evidence that is necessary to contemplated or pending litigation. The law provides that spoliation creates a rebuttable presumption that the evidence not preserved was unfavorable to the party responsible for the spoliation. Thus, if you find that Plaintiff disposed of the vehicle before providing Defendant an opportunity to inspect it, you may presume that the vehicle was not defective, however, Plaintiff may rebut that presumption.

actions coupled with extreme prejudice to the defendant warrants dismissal.

Plaintiff failed to preserve an allegedly defective vehicle in a crashworthiness case. The vehicle was, in effect, the most crucial and reliable evidence available to the parties at the time plaintiff secured representation and notified defendant of the accident.[10] By the time plaintiff filed suit, years after the accident had taken place, plaintiff had allowed the vehicle to be sold for salvage despite a request from defendant for the vehicle's location. For these reasons, we believe the resulting prejudice to the defendant incurable, and dismissal necessary.

### i. Choice of Law

This is a diversity suit, therefore, we must determine as a threshold matter whether to apply state or federal law. See Hanna v. Plummer, 380 U.S. 460; 85 S.Ct. 1136 (1965). Courts are split as to the question of whether state or federal law governs the imposition of sanctions for spoliation of evidence in a diversity suit. The majority of circuits have found that federal law applies. See, e.g., Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449-50 (4th Cir.2004)(imposition of sanctions for spoliation is an inherent power of federal courts and the decision to impose them is governed by federal law); see also King v. Illinois Central Railroad, 337 F.3d 550,

---

[10] In fact, the plaintiff failed to have a qualified expert examine the vehicle, including the airbag system, prior to its disposal.

556 (5th Cir.2003)(federal courts generally apply their own evidentiary rules in diversity matters, therefore, federal law governs whether a district court abused its discretion in declining to apply spoliation sanctions). Other jurisdictions apply state law. See Nationwide Mutual Fire Insurance Company, 174 F.3d 801, 804 (6th Cir.1999).

We agree with the first view, that federal law governs the imposition of spoliation sanctions. Furthermore, in accordance with the fourth and fifth circuits, we conclude that federal law applies because spoliation sanctions constitute an evidentiary matter. See Cole v. Keller Industries Incorporated, 132 F.3d 1044, 1046 (4th Cir.1998); see also King 337 F.3d at 556 (5th Cir.2003). This view is consistent with the law of our circuit regarding the rules of evidence, where we have held that, "in diversity cases, the Federal Rules of Evidence govern the admissibility of evidence in the federal courts." Johnson v. William C. Ellis & Sons Works, Inc., 609 F.2d 820 (5th Cir.1980).[11] Thus, we conclude that federal law governs the imposition of sanctions for failure to preserve evidence in a diversity suit.

Applicability of federal law notwithstanding, our opinion is also informed by Georgia law. Federal law in this circuit does not set forth specific guidelines,

---

[11] Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc)(Eleventh Circuit adopts as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

therefore, we will examine the factors enumerated in Georgia law. See Silvestri v. General Motors Corporation, 271 F.3d 583, 590 (4th Cir.2001)(concluding that although federal law of spoliation applies, the court will recognize principles from some of the state cases cited to them). Georgia law provides some guidance and was relied upon by the district court and the parties. Moreover, Georgia state law on spoliation is wholly consistent with federal spoliation principles.

ii. Analysis

We have long acknowledged the broad discretion of the district court to impose sanctions. This power derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. See Chambers, 501 U.S. at 43, 111 S.Ct. at 2132. Accordingly, sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process. See Gratton v. Great American Communications, 178 F.3d 1373, 1374 (11th Cir.1999). Dismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice. See Id.

No lesser sanction will suffice in this case.[12] The record reveals that plaintiff

---

[12] In this particular case, even applying the lesser sanction of excluding Riner's expert testimony would have the same practical effect as dismissal. In the absence of Riner's testimony, defendant would be entitled to judgment as a matter of law under Fed. R. Civ. P. 50.

-11-

knew the location and condition of the subject vehicle for a considerable amount of time following the accident. Moreover, plaintiff was fully aware that defendant wished to examine the vehicle. Knowing this, plaintiff ignored defendant's request and allowed the vehicle to be sold for salvage without notification to defendant of its planned removal. Even absent defendant's unambiguous request for its location, plaintiff should have known that the vehicle, which was the very subject of his lawsuit, needed to be preserved and examined as evidence central to his case. Plaintiff's failure to preserve the vehicle resulted in extreme prejudice to the defendant, and failure to respond to defendant's letter displayed a clear dereliction of duty.

Moreover, the district court's instruction regarding spoliation was insufficient

---

We review the denial of a motion for judgment as a matter of law de novo, and will reverse only if "the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

The evidence in this case may be summarized as follows: Flury testified that he veered off the road at approximately 55 miles per hour and crashed head-on into a tree at 35 to 40 miles per hour. Flury sustained a lower back injury as a result of the accident. Riner testified that the vehicle collided with the tree at over 15 miles per hour and that the airbag should have deployed at that speed. Finally, Clay testified that Flury's back injury could have been caused by forward flexion, and that if forward flexion had been reduced, Flury would have been spared some degree of injury.

To begin with, evidence attributing prevention of forward flexion to proper airbag function remains notably absent. In fact, the only testimony in this area suggests that airbags are not designed to protect the lower back, but rather the upper torso. Nevertheless, exclusion of Riner's testimony leaves plaintiff without any evidence that the airbag should have deployed under the circumstances of plaintiff's accident.

to cure the resulting prejudice to defendant. The instruction was weak and allowed the jury to balance the conduct of the parties. The record makes evident that only one party was at fault for the vehicle's spoliation - the plaintiff! Defendant could not have prevented spoliation, nor could any such action have been expected, because defendant was never informed of the vehicle's location and plaintiff did not file suit until years after the vehicle's removal.

Next we proceed to the district court's analysis under Georgia spoliation law and conclude that the court erred in its application. Dismissal is clearly warranted under Georgia law. According to Georgia law, spoliation of critical evidence may warrant the imposition of sanctions such as exclusion of certain evidence or outright dismissal of the case. See Bridgestone/Firestone, 574 S.E.2d at 926. In determining whether dismissal is warranted, the court must consider: (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded. As sanctions for spoliation, courts may impose the following: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator. See Chapman, 469 S.E.2d at 784.

The district court imposed none of the foregoing sanctions. Although the court instructed the jury on the issue of spoliation and on the presumptions which could be raised against a spoliator, the instruction was extremely weak, as discussed above. In considering the sanction of dismissal, the court focused on the relative culpability of the parties. The court determined that because defendant had months to inspect the vehicle before plaintiff sold it for salvage, defendant was partly to blame for the vehicle's spoliation. In our view, that is clear error. The court made this determination notwithstanding that defendant had no idea where to find the vehicle, had been instructed not to contact the plaintiff, and had made a specific request to plaintiff's attorney for the location of the vehicle. Moreover, the court blamed defendant for not following up on its initial request, and at the same time assigned no fault whatsoever to plaintiff for failing to respond to the defendant's letter.

The district court's instruction, even if properly imposed as a sanction against plaintiff, was insufficient to cure defendant's prejudice. Defendant was severely prejudiced as a result of the vehicle's destruction. Specifically, defendant did not have an opportunity to examine the vehicle's crush pattern, its airbag control module, or its present condition. Crush pattern is often the best evidence of a vehicle's impact speed and absence of such evidence can therefore be highly prejudicial. See Silvestri, 271 F.3d at 591. Moreover, loss of the vehicle's airbag control module prejudiced

defendant because the module is capable of providing reliable evidence of airbag malfunction. The airbag control system with its sensors, control module, and related systems was the crux of the case. Without the vehicle, defendant lost a valuable opportunity to test plaintiff's theory that the airbag was indeed defective. Finally, without examining the vehicle, defendant could not determine whether it remained in its "condition when sold" at the time of the accident, as required by Georgia law.[13] For these reasons, direct examination of the vehicle's condition was critically important to this case. Spoliation of the vehicle forced experts to use much less reliable means of examining the product's condition. The district court thus erred in concluding that a simple jury instruction could cure the resulting prejudice to defendant.[14]

With regard to the fourth factor, Georgia law does not require a showing of malice in order to find bad faith. See Bridgestone/Firestone, 574 S.E.2d at 927. The court should weigh the degree of the spoliator's culpability against the prejudice to the opposing party. Id. Strangely, the district court hinged its analysis on defendant's

_____

[13] This is unusually important in this case because a few months prior to this accident, the plaintiff had collided with a deer and had sustained substantial damage to the front and side of his truck.

[14] Defendant cites, Chapman v. Auto Owners Insurance Co., 469 S.E.2d 783, 784 (Ga. App. 1996) as persuasive authority that "a jury charge is insufficient to counter the prejudice resulting to a party who, because of the destruction of evidence, was unable to put on a full defense of its case."

culpability. However, the district court erred in assigning fault to the defendant. Defendant could not have ensured preservation of the vehicle because it had no knowledge of the vehicle's whereabouts. In addition, the defendant was prohibited from contacting the plaintiff. Plaintiff was therefore the only party in a position to preserve the vehicle and failed to do so. Prejudice to the defendant was great, and culpability rested solely upon the plaintiff. Therefore, the balance under Bridgestone/Firestone comes out squarely in favor of defendant.

Finally, destruction of the vehicle leaves potential for abuse in this case. Not only was plaintiff allowed to present expert testimony regarding airbag malfunction, the reliability of which remains questionable, but the plaintiff's entire case rests upon the testimony of said experts. Specifically, plaintiff's expert Barry Riner presented testimony regarding the vehicle's condition based on post-accident photographs and an accident report. While this evidence has some value, we cannot ignore the fact that defendant was precluded from obtaining much more reliable evidence tending to prove or disprove the validity of Riner's statements. The timing of events, from the date of the accident, to the extended amount of time between doctor's visits, to the amount of time it took for plaintiff to file suit, also remains troubling. As noted by the Georgia Court of Appeals, "the spoliation of critical evidence - for whatever reason - may result in trial by ambush." Bridgestone/Firestone, 574 S.E.2d at 927 (internal

quotations omitted). That is precisely what happened here.

## V. Conclusion

Plaintiff's spoliation of critical evidence in this case deprived the opposing party of an opportunity to put on a complete defense. Defendant's attempt to ascertain the vehicle's location for inspection was inexplicably ignored, and as a result, defendant was unable to examine the vehicle's condition. We cannot imagine a case in which the evidence destroyed would prove more critical. The resulting prejudice to defendant is incurable by any sanction other than dismissal. As such, we reverse the district court's decision regarding spoliation, and vacate the court's order with instructions to enter judgment for the defendant.

**REVERSED.**