[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15692
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-00066-LGW-RSB


GEORGE ALSTON,

Plaintiff - Appellant,

versus

CITY OF DARIEN,
a municipality and county seat of McIntosh County, Georgia,
DONNIE HOWARD,
Individually and in his capacity as Chief of the Darien Police Department,
ANTHONY BROWN,
Individually and in his capacity as a Police Officer of the Darien Police
Department,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 19, 2018)

Before MARCUS, JILL PRYOR and FAY, Circuit Judges.

PER CURIAM:

After George Alston was arrested for a minor traffic violation, he brought

suit under 42 U.S.C. § 1983 against the officer who arrested him, the City of

Darien, Georgia (the "City"), and the Chief of the Police Department for the City.

Alston alleged violations of his civil rights, including his Fourth Amendment right

to be free from unlawful arrest, his Fourth Amendment right to be free from

excessive force, and his First Amendment right to be free from retaliation for the

exercise of constitutionally protected speech.  The district court granted summary

judgment to the defendants on all of Alston's claims.  On appeal, Alston argues

that the district court erred in granting summary judgment to the officer and in

failing to impose sanctions on the defendants for the destruction of evidence.  After

careful review, we affirm.

## I.    BACKGROUND[1]

City of Darien Police Officer Anthony Brown conducted a traffic stop of a

car he saw driving on the highway with a dark tint on its windows.  As Brown

approached the stopped car, he noticed that portions of its license plate were

---

[1]  On review of the grant of a defendant's motion for summary judgment, we view the facts in the light most favorable to the plaintiff, resolving disputes of material fact in the plaintiff's favor. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

obstructed, including the county's name, the expiration date, and part of the state's name.

Brown tested the tint on the driver's side windows to see if it violated Georgia's statute prohibiting the application of light-darkening materials to a vehicle's windshield or side windows. The windows were darker than allowed by law. After he completed the test, Brown asked Alston, the driver, to hand over his driver's license, but Alston, who worked several contract jobs at the Federal Law Enforcement Training Center, gave Brown his work identification instead. When Brown told Alston that the work identification was not what he wanted, Alston handed over his driver's license.

During the entirety of this interaction, Alston was on the phone with his wife. Alston recognized Brown because Brown previously had pulled over Alston's wife—who was driving the same car Alston was driving during this incident—while Alston was a passenger. During that traffic stop, Alston's wife had received a citation for violating Georgia's window tint statute.

Brown went back to his police car with Alston's license and wrote two citations, one for violating Georgia's window tint statute and one for violating Georgia's statute prohibiting the obstruction of a license plate. Brown returned to Alston's car and handed him the citation for the window tint violation, which Alston signed. Alston, who was still on the phone with his wife, then said "This is

the reason I don't come to McIntosh County because it's fucked up over here."
Doc. 22-4 at 22.[2]  Brown asked Alston to whom he was speaking, and Alston replied only that he was on the phone.  In response, Brown pulled out his taser, held it in front of Alston's chest, and ordered him out of the car.[3]

Alston got out of the car; Brown handcuffed him.  As Brown adjusted the handcuffs, Alston told him that the handcuffs were too tight, but Brown continued to tighten them.[4]  Alston began to curse at Brown.

After Alston was handcuffed, Officer Robbie Gault arrived to take Alston to the McIntosh County jail.  Alston overheard Brown tell Gault, "I'm getting him because of how he acted in the car with his wife, and he was cussing me so I will call his job and have him fired."  Doc. 24-6 at 28.  Gault and Brown spoke for a few minutes.  Gault then drove Alston to the jail, which took three to four minutes.  During the drive, Alston asked Gault if he would loosen the handcuffs; Gault refused.

When they arrived at the jail, it took Gault two to three minutes before he removed Alston's handcuffs.  As he removed them, Gault remarked that Alston was a "big guy" and that Brown "should have used two pair of cuffs."  *Id.* at 31.

---

[2] Citations to "Doc. #" refer to the numbered district court docket entries.

[3] According to Brown, he pulled out his taser after Alston failed to comply with his first order to exit the car.  At this stage of the proceedings, however, we construe the facts in Alston's favor.

[4] Brown disputes that Alston alerted him that the handcuffs were too tight.

Alston testified that it felt as though Brown had placed the handcuffs over the metal bracelet on his right hand and across the face of the watch he was wearing on his left hand. He explained that his left hand was swollen and he had bruises and bleeding. Alston went to the hospital later that day. At a follow up appointment, he was diagnosed with radial sensory nerve damage, which causes numbness and tingling. The orthopedic surgeon who treated Alston testified that "to a reasonable degree of medical probability . . . the handcuffs caused [the] problem." Doc. 32-2 at 16.

After Alston left the jail, he wrote a report, which he delivered to the police department, complaining about Brown's treatment of him during the arrest. City Police Chief Donnie Howard called Alston to discuss the complaint. Howard asked Alston to return to the station and sign the complaint, but Alston did not do so. Howard also told Alston that it would be Alston's word against Brown's, and that Alston would have to take the matter to court.

Shortly after Alston's arrest, Brown called Alston's employer at the Federal Law Enforcement Training Center to complain about Alston's "misconduct" and "cursing" during the traffic stop. Doc. 24-3 at 57. Alston was not disciplined as a result of the call.

Alston sued Brown, Howard, and the City under 42 U.S.C. § 1983 for violations of his civil rights, including violations of his First Amendment right to

be free from retaliation for the exercise of constitutionally protected speech and violations of his Fourth Amendment rights to be free from unlawful arrest and excessive force. After discovery, the defendants moved for summary judgment on all of Alston's claims. Alston cross moved for summary judgment on his Fourth Amendment claims. With regard to his claim that Brown had violated his Fourth Amendment right to be free from excessive force, Alston contended that the dash cam in Gault's patrol vehicle had recorded part of the incident and that, despite repeated requests for a copy of the video, Alston still had not received it. Accordingly, Alston argued that evidence had been destroyed and summary judgment should be granted in his favor. He argued in the alternative that he should benefit from a presumption in his favor during trial because of the defendants' spoliation of evidence. The district court granted summary judgment to the defendants on all counts and declined to impose sanctions for spoliation of evidence. This is Alston's appeal.

## II.    STANDARDS OF REVIEW

We review *de novo* the district court's ruling on summary judgment, viewing the facts in the light most favorable to the nonmovant. *Hadley v. Gutierrez*, 526 F.3d 1324, 1328 (11th Cir. 2008). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the

nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then there is no genuine dispute as to any material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

We review the district court's decision regarding sanctions for the spoliation of evidence for an abuse of discretion. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943 (11th Cir. 2005).

### III.    ANALYSIS

On appeal, Alston challenges the district court's grant of summary judgment to Brown.  He also argues that the district court abused its discretion by imposing no sanctions for spoliation of evidence.  For the following reasons, we affirm the district court's grant of summary judgment to Brown and conclude that the district court did not abuse its discretion by refusing to impose sanctions for spoliation of evidence.[5]

---

[5] Although Alston also sued Howard and the City, his appellate brief addresses only his claims against Brown.  He thus has abandoned any argument that the district court erred in granting summary judgment to Howard or the City.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

## A.    The District Court Properly Granted Summary Judgment to Brown on Alston's § 1983 Claims.

Alston first argues that the district court erred in granting summary judgment to Brown on his § 1983 claims—that Brown violated his Fourth Amendment right to be free from unlawful arrest, his Fourth Amendment right to be free from excessive force, and his First Amendment right to be free from retaliation for the exercise of constitutionally protected speech.

To prove a claim brought under § 1983, a plaintiff must show that he "was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).  When defending against a § 1983 claim, however, a government official may assert the defense of qualified immunity, which "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  A government official asserting this defense bears the initial burden of showing that "he was acting within his discretionary authority." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Here, it is undisputed that Brown was acting within his discretionary authority.  Thus, the burden shifts to Alston to show that "(1) [Brown] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  Viewing the facts in the light most favorable to Alston, we

8

conclude that Alston has failed to meet his burden.  Summary judgment properly was granted to Brown on all of Alston's claims.

### 1.    Fourth Amendment Unlawful Arrest Claim

Alston first argues that Brown violated his Fourth Amendment right by arresting him unlawfully.  But Alston has failed to "demonstrate an issue of material fact about whether [Brown] violated his constitutional right[]" to be free from unlawful arrest.  *Mobley v. Palm Beach Cty. Sheriff Dept.*, 783 F.3d 1347, 1355 (11th Cir. 2015).  Brown thus is entitled to qualified immunity.  *Id.*

An arrest is lawful under the Fourth Amendment if the officer had probable cause to arrest.  Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Lee*, 284 F.3d at 1195 (internal quotation marks omitted).  But in the context of § 1983, a police officer may be entitled to qualified immunity even if there was no actual probable cause for arrest; instead, an officer who raises a qualified immunity defense will prevail if there was arguable probable cause.  *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003).  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest."

*Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (internal quotation marks omitted).

Here, Brown had actual probable cause—so he of course had arguable probable cause—to arrest Alston for a violation of O.C.G.A. § 40-8-73.1(b), Georgia's statute prohibiting darkly tinted windows. Indeed, Alston admits that it is "undisputed that [he]" violated the statute. Appellant's Br. at 16. Alston argues, however, that Georgia law gave Brown discretion either to issue Alston a citation or to arrest him, *see* O.C.G.A. § 17-6-11, and that after Alston signed the citation, Brown no longer had authority to arrest him because signing the citation was the equivalent of posting bail, *see* O.C.G.A. § 40-13-2.1. Alston's argument fails. Assuming, without deciding, that Alston is correct that after he signed the citation, Georgia law did not permit his arrest, "[t]here is no federal right not to be arrested in violation of state law." *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002). Although "the violation of state law may (or may not) give rise to a state tort claim, it is not enough by itself to support a claim under [§] 1983." *Id.* So even if Alston's arrest violated the procedures established by Georgia law, it does not follow that the arrest violated the United States Constitution. Because there is no dispute that Brown had probable cause to arrest Alston for violating O.C.G.A. § 40-8-73.1(b), the arrest was lawful under the Fourth Amendment.

In any event, even if Alston's signature on the window tint citation made it unlawful for Brown to arrest Alston for that offense, Brown also had probable cause to arrest Alston for violating Georgia's statute prohibiting obstruction of a license plate.  That statute prohibits any "apparatus that obstructs or hinders the clear display and legibility of a license plate."  O.C.G.A. § 40-2-41.  Undisputed evidence showed that the county's name, the expiration date, and part of the state's name were obstructed on Alston's license plate.  Brown thus had probable cause to believe that Alston had violated the statute.  *See Wilson v. State*, 702 S.E.2d 2, 4 (Ga. Ct. App. 2010) (explaining that a tag with an obstructed expiration date violated O.C.G.A. § 40-2-41).[6]

Alston argues that Brown cannot rely on the obstructed tag violation because Brown admitted that he arrested Alston for the window tint violation. Alston insists that any reliance on the obscured tag violation is a "fictional use."  Appellant's Br. at 20.  We disagree.  "[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."  *Lee*, 284 F.3d at 1196

---

[6] Alston notes that the Georgia state court entered a nolle prosequi on the obstructed tag violation, but "the entry of nolle prosequi does not act as an acquittal."  *Bell v. State*, 672 S.E.2d 675, 676 (Ga. Ct. App. 2009) (internal quotation marks omitted).  In light of the undisputed evidence that information on Alston's license plate was obstructed, "we cannot conclude that the nolle pros[equi], in itself, is sufficient to create an issue of material fact" about whether Brown had probable cause to believe Alston had violated O.C.G.A. § 40-2-41.  *Lewis v. Ritz Carlton Hotel Co., LLC*, 712 S.E.2d 91, 95 (Ga. Ct. App. 2011).

11

(internal quotation marks omitted).  Because probable cause existed for the obstructed tag violation, Alston's constitutional right to be free from unlawful arrest was not violated, no matter the offense for which Brown subjectively believed he was arresting Alston.  Accordingly, Brown is entitled to qualified immunity on the Fourth Amendment unlawful arrest claim.

### 2.    Fourth Amendment Excessive Force Claim

Alston next argues that Brown violated his Fourth Amendment right to be free from excessive force.  Alston admits that if Brown lawfully arrested him, Brown acted reasonably in handcuffing him.  He asserts, however, that Brown acted unreasonably when, in response to Alston's complaint that the handcuffs were "too tight," Brown continued to tighten the handcuffs on top of Alston's watch and bracelet, causing additional pain.[7]  But setting aside whether the force used was excessive, Brown is entitled to qualified immunity because Alston has not shown that Brown's actions violated clearly established law.

"There are two ways for a party to show that the law clearly established that a particular amount of force was excessive.  The first is to point to a materially similar case that has already decided that what the police officer was doing was unlawful."  *Id.* at 1198 (internal quotation marks omitted) (alteration adopted).  The second is "to show that the official's conduct lies so obviously at the very core

---

[7] Alston makes no argument that Brown's pulling out and holding a taser in front of his chest to effectuate the arrest constituted excessive force, so we do not address it.

12

of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Id.* at 1199 (internal quotation marks omitted).  Alston relies on the latter method.

"[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).  We previously have held that a painful handcuffing, during which the plaintiff "fell to his knees screaming that [the defendant] was hurting him," followed by a 10 minute trip to the police station, was not unconstitutionally excessive force, even though the handcuffing loosened the plaintiff's internal surgical hardware from a preexisting injury, leading to 25 subsequent surgeries and amputation of the plaintiff's arm.  *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).  Additionally, "a police officer need not credit everything a suspect tells him," especially "when the officer is in the process of handcuffing [the] suspect." *Rodriguez v. Farrell*, 294 F.3d 1276, 1278 (11th Cir. 2002).  We therefore cannot agree that it was "readily apparent" that tightening the handcuffs over Alston's watch or bracelet, even as Alston complained about the tightness of the handcuffs, was unlawful.  *Lee*, 284 F.3d at 1199.  Alston thus has failed to show that Brown violated clearly established law, and Brown is entitled to qualified immunity on that claim.

### 3.    First Amendment Retaliation Claims

Alston also argues that Brown violated his First Amendment rights by (1) contacting Alston's employer in retaliation for Alston's complaint with the police department, and (2) arresting Alston in retaliation for his constitutionally protected speech at the scene of the traffic stop.  For the reasons that follow, we hold that the district court properly granted summary judgment on both of these claims.

Alston's claim that Brown violated his First Amendment right by contacting his employer after he filed a complaint with the police department fails because Alston has failed to create a genuine dispute of material fact about whether a causal connection existed between Alston's complaint and Brown's phone call to his employer.[8]  "To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016).  A defendant "adversely affects protected speech if his alleged retaliatory conduct would likely deter a

---

[8] Alston does not argue that the Brown contacted his employer in retaliation for his speech during the arrest, only that Brown contacted his employer in retaliation for the complaint Alston filed with the police department.

person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 481 (internal quotation marks omitted).

Alston has failed to provide sufficient evidence of the third element—a causal connection between his complaint and Brown's retaliatory actions—because the record reveals that Brown contacted Alston's employer before Alston filed the complaint.[9]  Alston argues otherwise, suggesting that Brown's testimony that he called Alston's employer "the next day" established that Brown made the call the day after Alston filed the complaint.  Doc. 22-5 at 56.  In context, Brown's deposition testimony was ambiguous about whether "the next day" referred to the day after Alston was arrested or the day after Alston filed the complaint.  Brown later removed any ambiguity, however, when he was asked to clarify whether he made the call after receiving the complaint.  He responded:  "No, no, no.  That wasn't after I got the complaint." *Id.* at 59.  Brown could not have contacted Alston's employer in retaliation for a complaint he had not yet received.  Alston thus has failed to create a genuine dispute of fact about whether Brown violated Alston's First Amendment rights by contacting Alston's employer.

As for Alston's claim that Brown violated his First Amendment rights by arresting him based on his constitutionally protected speech, this claim also fails.

---

[9] Because Alston has failed to create a dispute of material fact about the third element, we do not address whether Alston's speech was protected or whether Brown's phone call to Alston's employer adversely affected the protected speech.

15

At the time of Alston's arrest, there was no clearly established "right to be free from a retaliatory arrest that [was] otherwise supported by probable cause." *Reichle v. Howards*, 566 U.S. 658, 665 (2012).  Because, as we explained in Part III.A.1, Brown had probable cause to arrest Alston, Brown is entitled to qualified immunity on this claim.

**B.    The District Court Did Not Abuse Its Discretion In Failing to Impose Sanctions for Spoliation of Evidence.**

Alston argues that the district court abused its discretion by declining to impose sanctions for spoliation of evidence because—according to Alston—the defendants destroyed Gault's dash cam video tape, which would have shown a portion of Alston's interaction with Brown and Gault and supported his claim that Brown used excessive force.  He argues that the destruction of the video should have led the district court to grant summary judgment in his favor on that claim or, in the alternative, to draw an adverse inference against Brown.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  In determining the propriety of spoliation sanctions, courts consider the following factors:

> (1) whether the [moving party] was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) practical importance of the evidence; (4) whether the [spoling party]

16

acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded.

*Flury*, 427 F.3d at 945.[10]  "In the Eleventh Circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith."  *Mann v. Taser Int'l., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (internal quotation marks omitted).  As such, "mere negligence in losing or destroying records is not sufficient to draw an adverse inference."  *Id.*

The district court did not abuse its discretion in declining to impose sanctions.  Assuming, without deciding, that the dash cam video was in fact destroyed, Alston has failed to show that he was prejudiced by its absence or that the video had practical importance.  Alston argues that the video "would speak for itself and would either exonerate appellee Brown or show the extent of his unlawful behavior."  Appellant's Br. at 37.  Alston's concession that the video might exonerate Brown fails to demonstrate the necessary prejudice.  Moreover, Alston testified about what happened on the scene of the arrest and during his transport to the jail.  The district court credited this testimony and determined that summary judgment nonetheless was due to be granted to the defendants as a matter of law.  Alston thus was not prejudiced by the failure of the defendants to produce the dash cam video.  Alston has also failed to show the video was destroyed

---

[10] Although the court in *Flury* analyzed Georgia spoliation law, "Georgia state law on spoliation is wholly consistent with federal spoliation principles."  *Flury*, 427 F.3d at 944.

17

intentionally or in bad faith.  The district court thus did not abuse its discretion in declining to impose sanctions.

## IV.    CONCLUSION

For the reasons set forth above, we affirm the district court's grant of summary judgment to the defendants.

**AFFIRMED.**

18