[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13637

Non-Argument Calendar

_____

ADRIANA MENDEZ,

Plaintiff-Appellant,

versus

WAL-MART STORES EAST, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-03422-AT

_____

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

BRANCH, Circuit Judge:

Adriana Mendez appeals the district court's order granting summary judgment in favor of defendants Wal-Mart Stores, Inc. and Wal-Mart Stores East, LP, ("Walmart") in her "slip and fall" negligence suit under Georgia law. On appeal, Mendez argues that the district court erred in (1) analyzing her slip and fall claim under a premises liability theory instead of an active negligence theory, and (2) denying her spoliation of evidence claim and related sanctions request. After review, we affirm.

## I.    Background

The events giving rise to this negligence case occurred over a nine-minute period on the evening of September 15, 2018, at a Walmart in Lawrenceville, Georgia. Specifically, that evening, Mendez and her two grandchildren checked out after shopping at Walmart and headed to Mendez's car. When Mendez reached her vehicle, she realized that she had been charged twice for the same item and walked back into the store to dispute the charge with customer service. At 7:52 p.m., while Mendez was waiting for assistance at customer service, a Walmart employee, Davanta Douglas, conducted a routine walk-through safety inspection of the area where Mendez would later slip. He did not see any liquid or foreign substance on the floor during that inspection and "the

floor was dry, clean, and free of debris." Within the next five minutes, numerous individuals traversed the same area.

At 7:57 p.m., while waiting for assistance, Mendez walked a few steps away from the customer service area to purchase a scratch-off lottery ticket. Less than a minute later, a Walmart employee, Andres Valdez, pushed a shopping cart full of bags of trash through the front of the store and parked it in front of the customer service desk area for less than a minute.[1] While the cart with trash was parked near the service desk area, Douglas conducted another walk-through inspection, and he did not see any liquid on the floor. Nor did he see any liquid trailing from the cart with trash in it. A few seconds after Douglas's walk-through, Valdez removed the shopping cart with trash from the area.

Less than a minute later, Mendez finished up at the lottery machine and started walking back to the customer service desk, when she slipped and stumbled forward. Two Walmart employees who were standing nearby caught her and prevented her from falling to the ground.

Mendez had an unobstructed view of the floor before she slipped, and she did not see any trash or liquid on the floor. After

---

[1] Video footage from the store showed Valdez stumble and fall at one point while pushing the cart—in a different area from where Mendez later slipped—and he testified during his deposition that he did not remember what caused him to fall. However, he also stated that he had fallen "[l]ots of times" at work because he was physically disabled and overworked.

she slipped, she saw some liquid on the floor where she had slipped. She could not recall the size or color of the liquid but noted that "it wasn't that conspicuous." Douglas alleged that, after closer inspection, he observed a small spot of brown liquid "the size of a dime or a nickel," which was "not in sight" prior to Mendez slipping.

Two days after the incident, pursuant to Walmart's standard protocol when there is an incident on the store's premises, Walmart's Asset Protection Associate, Folake Olanrewaju, preserved 16 hours of video in the form of two-hour clips from eight different cameras documenting the area of the incident.

Meanwhile, four days after the incident, Mendez's attorneys sent a spoliation letter to Walmart, advising it that litigation was anticipated and directing Walmart to maintain and preserve various information, including video footage from the date of the accident.

Thereafter, Mendez brought a negligence action against Walmart in the State Court of Gwinnett County, seeking damages for injuries that she suffered from the slip, including injuries to her lower back, neck, and right shoulder. In her complaint, she alleged that Walmart had a duty to maintain and inspect the store's premises and to ensure that it was free of hazards which could cause harm to invitees, including Mendez. She maintained that, on September 15, 2018, Walmart "and/or their employees or agents for whom [Walmart] [is] vicariously liable" "caused, created and/or permitted an unsafe, dangerous and hazardous condition

to exist" in the form of "liquid on the floor," and "failed to undertake reasonable inspections of the premises" and eliminate the dangerous condition. Mendez alleged that Walmart knew or should have known of the dangerous condition, and the dangerous condition resulted in her injury. Walmart removed the action to federal court based on diversity jurisdiction.

During discovery, it was revealed that one of the preserved video clips covered the wrong time frame. Specifically, while the other video clips reflected one hour before and one hour after the incident from 7:00 to 9:00 p.m., one clip was from 5:00 to 7:00 p.m., prior to the incident. When asked about this discrepancy in the footage, Olanrewaju stated in her deposition that it was her intention to preserve the footage from 7:00 p.m. to 9:00 p.m., and that she did not know why the wrong footage was saved. She explained that, when transferring the footage to a DVD, she had synced the same time frame for all eight cameras, and she did not know why one "skipped two hours behind." Olanrewaju never reviewed the preserved video footage to make sure that the correct footage was preserved, explaining that reviewing the footage after transferring it to a DVD was not part of the process.

Additionally, during discovery, it was revealed that, a few days after the accident, Walmart employee Valdez received disciplinary action because he "was observed on camera taking the trash th[r]ough the store in a buggy [in violation of Walmart's trash collection policy,] and the trash bag was leaking through the store

and caused a customer accident."[2]  Valdez was instructed to use the company trash bins designated for collecting trash and to see a member of management if he had any questions.[3]

Walmart moved for summary judgment, arguing that it was entitled to summary judgment because Mendez could not show that it had actual or constructive knowledge of the dangerous condition.  Walmart also argued that Mendez could not establish a claim of active negligence based on the alleged leaking trash bags because she failed to present a specific act or omission attributable to Walmart that constituted active negligence or any admissible evidence demonstrating that the bags were in fact leaking or that any such leak occurred in the incident area.  Mendez opposed Walmart's motion for summary judgment, asserting that a genuine issue of fact existed as to whether the "active negligence" of Valdez caused her slip and fall (in which case knowledge of the hazard is imputed to the employer), or whether Walmart, at a minimum,

---

[2] The manager who issued the disciplinary action stated he did not know if the "customer accident" referred to in Valdez's file was Mendez's accident, and that he never saw a video of her accident.  He also could not recall how he came to the conclusion that the trash bags in Valdez's cart were leaking, but he thought that someone may have told him that the trash bags were leaking.  He also thought that someone may have told him that Mendez's accident was because the trash bags were leaking.

[3] Walmart's established trash collection policy required employees to use designated solid, rolling trash bins to collect trash, not the store's shopping carts.  A manager testified that the store did not want the shopping carts used to transport trash because "it is not sanitary" and is "a health issue."

had constructive notice of the hazard. She also argued that Walmart had intentionally destroyed video evidence from one of the cameras in violation of the spoliation letter, and that the destroyed footage "would have shown the closest, detailed coverage of the incident itself, [and] exactly what was on the floor." She maintained that, based on Walmart's conduct, she was entitled to an inference that the destroyed footage was adverse to Walmart, which would preclude summary judgment. In response, Walmart argued, in part, that its post-accident disciplinary actions against Valdez were inadmissible subsequent remedial measures.

The district court granted Walmart's motion for summary judgment. Specifically, citing to other district court decisions, the district court concluded that Mendez did not have a claim for active negligence because, under Georgia law, a defendant is not liable for active negligence where an employee unintentionally causes a spill, and Mendez did not allege that Valdez purposely spilled liquid on Walmart's floor.[4] Next, the district court concluded that Mendez was not entitled to an adverse inference or denial of summary judgment based on spoliation of evidence because the preservation of the wrong time frame from one of the cameras was unintentional and the footage would not have shown the incident

---

[4] In reaching this conclusion, the district court determined that the finding that Valdez caused the spill was not a remedial measure and was admissible.

area.[5]  Finally, the district court concluded that Mendez failed to show that Walmart had constructive knowledge of the hazard because the evidence showed that (1) no one, including Mendez, saw the liquid on the floor, and—accepting Mendez's contention that the buggy with trash caused the spill—less than one minute elapsed between the spill and Mendez slipping, which left Walmart with no time to discover and remove the hazard; and (2) Walmart had a reasonable inspection procedure in place that was adequate as a matter of law.  Mendez timely appealed.

## II.    Discussion

### A.  Whether the district court erred in applying the premises liability framework to Mendez's claim

Mendez argues that the district court erred in analyzing her negligence claim under a premises liability theory because the evidence established that the liquid hazard on which she slipped was caused by the active negligence of Valdez who pushed a shopping cart full of leaking trash through the store in violation of Walmart's trash collection policies and procedures.

---

[5] The district court noted that Mendez relied on the factors identified in *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005), for her argument that spoliation sanctions and an adverse inference were warranted, but that post-*Flury*, the Federal Rules of Civil Procedure had been amended to specifically address the spoliation of electronically stored information, *see* Fed. R. Civ. P. 37(e).  The district court highlighted that this Circuit has not addressed whether the *Flury* factors are still applicable in light of Rule 37(e), but concluded that regardless Mendez was not entitled to sanctions.

"We review a district court's grant of summary judgment *de novo*, view[ing] the evidence in the light most favorable to the non-moving party." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*) (quotations omitted). Summary judgment is proper if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotations omitted)). We may "affirm on any ground supported by the record." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 n.5 (11th Cir. 2013).

When, as here, federal jurisdiction over the negligence case is founded on diversity, state law governs the substantive issues. *See ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1299 (11th Cir. 2018). "[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). Federal courts sitting in diversity must also "follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. NY Life Ins. Co.*, 311 U.S. 464, 467 (1940).

"Georgia law distinguishes between negligence cases where a condition on the premises causes injury to someone and those where an employee's active negligence causes injury to someone." *Byrom v. Douglas Hosp., Inc.*, 792 S.E.2d 404, 408 (Ga. Ct. App. 2016). For example, in *Byrom*, the Court of Appeals of Georgia concluded that the plaintiff's case was an active negligence case where the plaintiff's allegations did not "implicate any condition of the [hospital] premises itself," and instead attributed the plaintiff's injuries to the nurse's inaction in "fail[ing] to raise the foot pedals of the wheelchair or otherwise assist [the plaintiff] in exiting the wheelchair," which resulted in the patient's fall. *Id.* at 406, 408–09. Similarly, in *Lipham v. Federated Dep't Stores, Inc.*, 440 S.E.2d 193, 194–95 (Ga. 1994), the Supreme Court of Georgia held that a plaintiff's claim involved active negligence where the plaintiff alleged that she was in a store parking lot watching an event in which people were running and playing games, when a store employee, who was participating in the event, turned around too quickly and unintentionally knocked the plaintiff to the ground. In reaching this conclusion, like the *Byrom* court, the *Lipham* court emphasized that the allegations did "not concern a condition of the premises over which [the store] could have exercised some degree of control or of which [the store] could have warned." *Id.* at 194.

In support of her argument that her case is an instance of active negligence, Mendez relies almost exclusively on *Bruno's Food Stores, Inc. v. Taylor*, 491 S.E.2d 881, 887 (Ga. Ct. App. 1997). According to her, the evidence demonstrates that Valdez created a

hazardous condition on Walmart's floor by improperly removing trash from the premises, and in *Bruno's Food Stores* the Court of Appeals of Georgia held that "[w]here acts or omissions of the owner/occupier work positive injury to others, such acts or omissions are active negligence in the classic sense." *Id.* at 887. However, *Bruno's Food Stores* is not binding precedent in Georgia; it is physical precedent only because the entire panel did not concur fully in the opinion.[6]  *See* Ga. Ct. App. R. 33.2(a)(2) (providing that for decisions issued prior to August 1, 2020, "[i]f an appeal was decided by a division of this Court, a published opinion in which all three panel judges fully concur is binding precedent. An opinion is physical precedent only (citable as persuasive, but not binding, authority), however, with respect to any portion of the published opinion in which any of the panel judges concur in the judgment only, concur specially without a statement of agreement with all that is said in the majority opinion, or dissent.").[7]  Indeed,

---

[6] In fact, two of the members of the three-judge panel specially concurred in a separate opinion in which they disagreed with the language on which Mendez relies for her argument. *Bruno's Food Stores*, 491 S.E.2d at 893 (Birdsong, J., joined by Ruffin, J., specially concurring) ("[T]he majority's active negligence theories and its effort to merge active negligence concepts in slip and fall cases are contrary to [Georgia's] Supreme Court precedent and were rejected by this Court [previously].").

[7] The Court of Appeals of Georgia eliminated the physical precedent rule for all opinions issued on or after August 1, 2020. *See* Ga. R. Ct. App. 33.2(a)(1) ("Effective August 1, 2020: If an appeal is decided by a division of this Court or by the Court sitting en banc, a published opinion in which a majority of the

the Court of Appeals of Georgia has held unequivocally that, due to its status as physical precedent only, *Bruno's Food Stores* "cannot be used to support an 'active negligence' theory in a slip and fall case." *Mock v. Kroger Co.*, 598 S.E.2d 789, 791 (Ga. Ct. App. 2004).

Similarly, none of the other cases that Mendez cites in passing support an active negligence theory in a slip and fall case. First, Mendez's reliance on *Johnson v. Kimberly Clark*, 504 S.E.2d 536 (Ga. Ct. App. 1998), is misplaced, as the Court of Appeals of Georgia has already rejected a similar argument that *Johnson* supported an active negligence theory in a slip and fall case, noting that "*Johnson* is not a slip and fall case and therefore did not alter [Georgia's] well-established law" governing slip and fall cases. *Mock*, 598 S.E.2d at 791. Second, *Greenforest Baptist Church, Inc. v. Shropshire*, 471 S.E.2d 547 (Ga. Ct. App. 1996), is not a slip and fall case and has no application to the governing law in this case. Finally, although both *Kaplan v. Pulte Home Corp.*, 537 S.E.2d 727 (Ga. Ct. App. 2000), and *BBB Service Co., Inc. v. Glass*, 491 S.E.2d 870 (Ga. Ct. App. 1997), involve slip and fall scenarios, they are physical precedent only and do not reflect binding Georgia law. Furthermore, even though they may be persuasive authority, both of those cases are distinguishable from the case at hand because they involve scenarios where the employee actively and

judges fully concur in the rationale and judgment of the decision is binding precedent.").

intentionally placed a liquid hazard on the ground. *See Kaplan*, 537 S.E.2d at 731 (independent contractor pressure washed four driveways in freezing weather without salting or sanding); *BBB Serv. Co.*, 491 S.E.2d at 872 (Eldridge, J.) (concluding that improper application of degreaser on restaurant floor could support a claim of active negligence). Here, even assuming the trash bags were leaking, there is no evidence that Valdez was aware of the leak or intentionally took any action to place liquid on Walmart's floor.

In short, Mendez fails to cite any binding authority under Georgia law supporting an active negligence theory in a slip and fall case. And the persuasive value of the non-binding cases she cites is limited because they have either been rejected by the Georgia courts as a basis for active negligence in the slip and fall context or are fully distinguishable. More importantly, the allegations in her complaint clearly involve a condition of the premises. Mendez alleged that she was shopping at Walmart when "she slipped and fell from liquid that was on the floor" and that Walmart "had a duty to inspect the Premises to discover dangerous and hazardous conditions . . . and to either eliminate such . . . conditions or to warn its invitees." Thus, the district court did not err in analyzing her claim under the framework of traditional premises liability.[8]

---

[8] Mendez did not argue on appeal that, if the premises liability framework applied, the district court erred in concluding that her claim failed. Accordingly, she abandoned any challenge to the district court's decision on that ground. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th

B. *Whether the district court erred in denying Mendez's spoliation of evidence claim*

Mendez argues that, after receiving her written request to preserve all video evidence, Walmart destroyed critical video evidence that would have shown the Walmart employee pushing leaking trash bags through the store and the area of the slip and fall. She maintains that the district court erred in holding that Walmart's destruction of the video footage was unintentional and that an adverse inference from the destruction of the evidence was not warranted.

We review the district court's decision regarding spoliation for an abuse of discretion. *ML Healthcare Servs.*, 881 F.3d at 1297. "Applying that standard, we will only reverse if we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* (quotations omitted).

"Spoliation is defined as the destruction of evidence or the significant and meaningful alteration of a document or instrument." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) (quotations omitted). "[A] party's spoliation of critical evidence may warrant the imposition of sanctions." *Id.* (quotations omitted).

---

Cir. 2014) ("When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, [s]he is deemed to have abandoned any challenge of that ground.").

In *Flury v. Daimler Chrysler Corporation*, we held that "federal law governs the imposition of spoliation sanctions" in a diversity suit, but then noted that federal law does not set forth "specific guidelines" to determine when spoliation sanctions are warranted. 427 F.3d 939, 944 (11th Cir. 2005). Accordingly, we borrowed a multi-factor test from Georgia spoliation law, which we determined was "wholly consistent with federal spoliation principles." *Id.* The factors that courts may consider in determining whether sanctions for spoliation of evidence are warranted, include: "(1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; [and] (4) whether the plaintiff acted in good or bad faith." *Id.* at 945.[9]

---

[9] As the district court noted, post-*Flury*, Rule 37 of the Federal Rules of Civil Procedure was amended to address the failure of a party to preserve electronically stored information. Rule 37 now provides that:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

Importantly, an adverse inference, like that sought by Mendez, "is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009) (quotations omitted).   "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Id.*

Walmart's asset protection associate Olanrewaju testified that she intended to preserve the footage for the time period from 7:00 to 9:00 p.m. for all of the relevant cameras and that she did not know why the wrong footage was saved from one of the cameras. And she never reviewed the preserved video footage to make sure that the correct footage was preserved.   Therefore, the record at best shows that mere negligence occurred in the destruction of the

---

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).  As we noted in *ML Healthcare Services*, we have yet to address whether Rule 37(e) supplants the *Flury* factors when a party seeks sanctions based on spoliation of electronically stored information.  881 F.3d at 1308.  And we need not reach that question here because as discussed in this opinion, Mendez cannot show prejudice or bad faith; therefore, sanctions are not warranted under either standard.

video footage from one of the eight cameras, which is not sufficient to warrant an adverse inference. *Id.*

Furthermore, contrary to Mendez's contention, having reviewed the 5:00 to 7:00 p.m. video footage from the camera in question, we conclude that the district court determined correctly that Mendez did not suffer any prejudice from the destruction of the footage from the time of Mendez's fall because the camera was not positioned such that it would have shown her fall or whether the buggy pushed by Valdez was leaking.

Accordingly, the district court did not abuse its discretion in denying Mendez's spoliation sanctions request.

## III.    Conclusion

In light of the above, we affirm the district court's grant of summary judgment to Walmart.

**AFFIRMED.**